WARREN J. LOCKWOOD v. THE MAYOR AND COMMON COUNCIL OF THE TOWN OF BOONTON ET AL.

Submitted December 2, 1915—Decided March 29, 1916.

1. When a license to sell liquor has lapsed, and the place has remained closed for three years, it lost its character of an old place, and became a "new place" within the meaning of section 11 of the act of 1889, as amended by *Pamph. L.* 1906, *p.* 203. *Comp. Stat., p.* 2908.
2. It being conceded that the premises licensed are within the prohibited distance of two hundred feet from a public school, the transfer of the license was illegal.

---

On *certiorari.*

Before Justices PARKER, KALISCH and MINTURN.

For the prosecutor, *Frank H. Pierce.*

For the mayor and council, *Claude Garrison.*

For the defendant Lewis, *King & Vogt.*

The opinion of the court was delivered by

MINTURN, J. The town of Boonton, by its common council, passed a resolution and an ordinance, purporting to transfer a liquor saloon license of William D. Lewis, from his place, on Brook street, to premises at the corner of Liberty and Main streets.

It is insisted, *inter alia,* by the prosecutor that these proceedings should be set aside, in° the first place, because the premises to which the transfer was made is not a new place within the meaning of the statute governing the sale of liquors, and because the place in question is within two hundred feet of public school grounds, and so militates against the same statute.

The facts are that the building in question is one hundred and ninety-three and nine-tenths feet from the curtilage of the Boonton public school; that for eleven years, anterior to June 10th, 1912, it was duly licensed for the sale of liquor, and after that period remained unoccupied for three years, until the transfer under review was made; that on June 3d, 1912, the then owner, Swanton, was refused a license upon the ground that he was guilty of violating the Excise law; and that on June 10th he quit the place and his license having expired the business ceased to exist; that on August 12th, 1912, he conveyed the premises to the Paterson Brewing and Malting Company; and that not until October 6th, 1913, was an application made for a license; that the application was then laid over from time to time until February 2d, 1914, when it was returned to John Conn, the applicant.

In May, 1914, one Porter made a similar application, which was never acted upon. On November 16th, 1914, the defendant Lewis, who then had a place on Brook street, applied for a transfer of his license from that place to the place in question, but no action was then taken upon the application. The regular licensing period was in May of 1915, but no application was made at that time, but on July 22d, 1915, at an adjourned meeting, Lewis presented an application for a transfer of license from Brook street to the place in question, and the resolution in question was then passed granting the transfer. Evidently, doubting the legality of the transfer by resolution, on August 10th, 1915, the mayor called a special meeting to be held that evening, without designating the object of the call. Six of the eight members of the council attended, and the ordinance was introduced. The next even-

ing, at another special meeting similarly called, five of the eight members being present, the ordinance in question was adopted.

On August 9th, the Court of Common Pleas of Morris county appointed a board of excise commissioners for the town, and on the next day the board organized. For the purposes of this case, we deem it necessary only to say that the place in question, by reason of the revocation of its license, on June 3d, 1912, and its abandonment shortly thereafter by its then owner, together with the fact that it remained closed for over three years from that period, while the council at each annual licensing period met without receiving an application for a license, the place lost its character as an old place, and, in contemplation of the statute, is thereby relegated to the category of a new place, and must be dealt with as such.

The statute dealing with the subject is as follows: "No license shall be granted to sell spirituous, vinous, malt or brewed liquors by less measure than one quart * * * in any new place within two hundred feet of the curtilage of a church edifice, school house or armory, measured between the nearest point of the same and nearest point of the building wherein such liquors, or any of them, are intended to be sold." 3 *Comp. Stat., p.* 2908; *Pamph. L.* 1889, *p.* 83, amended *Pamph. L.* 1906, *p.* 203. This act was construed by this court in *Eckersly* v. *Abbott*, 79 *N. J. L.* 157, where Mr. Justice Bergen says that it was not the legislative intent to prevent the renewal or continuance of a license, "unless there is a real and substantial abandonment of the business."

In all the cases following this adjudication, where the granting of the license was affirmed by this court, the *ratio decidendi* was that the owner by a persistent and continuous course of conduct in and about the premises, had maintained his claim to have the premises considered and treated by the licensing body as an existing inn, tavern or house of public entertainment.

In *Parnes* v. *Board of Excise*, 82 *N. J. L.* 285, the place was out of business only one year, and at the first available opportunity application was made for a license.

And such, substantially, was the situation in *Londa* v. *Kling,* 83 *N. J. L.* 405, and in *Presbyterian Church* v. *Miller,* 85 *Id.* 463.

In this case, it is manifest from the record that the reason for the abandonment of the premises by Swanton was that the character of the house had become notoriously unenviable, and quite obviously, therefore, it was difficult to obtain an occupant or an applicant satisfactory to the council, who would stand sponsor for the place. In such a posture the method of transfer of license adopted here from an existing inoffensive licensed place, to the place in question, apparently presented the only available *modus operandi,* which the council at a special meeting could adopt, to rehabilitate it as an old place, and thus exclude it from the statutory prohibition.

The premises, in view of the circumstances, remain, however, in the category of a new place, and are subject to the statutory requirements of such a *status,* and the proceedings adopted by the council were, therefore, ineffectual to restore the premises to its lost *status,* as an old place.

Since it is conceded in the briefs that the premises are within the statutory prohibited distance from the curtilage of the public school, it follows that the resolution providing for the transfer of the license must be vacated, with costs.