APPLICANTS FOR RETAIL PACKAGE LIQUOR LICENSES IN FLOYD COUNTY, Kentucky: Morgan Joseph; John Hardwick; James Cline; William E. Turner; Sue Owens; Janet Hall; Kermit Hager; Jimmy Yates; Bobby Turner; Edman Barnett; Edward Kidd; Rady Davis; Charlie Keathley; Dan Collins; Avery Hamilton; Gobel Martin; Jack Edford Owens; Mike H. Turner; Sandy Boyd; Homer Hall; Bobby G. Tackett; Johnny Akers; Fred Bingham; Sharon L. Bingham; Karen Bingham; Ronald Frasure; Joyce Burchett; Malcom D. Layne; Jeff Bingham; Morris Hylton; and Concerned Citizens of Floyd County, Vickie Sheffield; Franklin D. Boyd; C.C. Hall; James B. Burchett; Freddie Powers, Jr.; Amanda N. Hall; John Philip Sammons; Lon Gibson; Roy L. Compton; Steve Bishop and Ashland Joseph, Appellants,

v.

T.J. GULLEY; Paul F. Porter; Marcus Minix and Joe Thompson; George Hale; H.R. Burke; Wallace J. Scalf; Roy Ratliff; Barry Lind Combs; Jeanice Johnson; William E. See and Willard Stanley, Jr.; Philip R. Johnson; Darvin Burchett and Virgil Hall; Ed Ousley; Martin Liquors, Inc.; Pit-Stop, Inc.; Michael Fitzpatrick; Glen S. Anderson, Sr.; J.M. May; Tom Ed Music and Frank Adams; Prestonsburg Inn, Inc.; J.R. McClung and W.L. Smith; Alcoholic Beverage Control Board; Ed Farris, Chairman of Alcoholic Beverage Control Board and Commissioner of the Department of Alcoholic Beverage Control in his official and individual capacities; Michael Davidson, Distilled Spirits Administrator, member of Alcoholic Beverage Control Board, in his official and individual capacities; Johnny Crimmins, member of Alcoholic Beverage Control Board, in his official and individual capacities, Appellees.

Court of Appeals of Kentucky.

March 16, 1984.

Discretionary Review Denied by Supreme Court Sept. 7, 1984.

Gary E. Johnson, Johnson & Mann Law Firm, Prestonsburg, James Park, Jr., Stephen E. Embry, Brown, Todd & Heyburn, Lexington, David E. Murrell, Murrell & Murrell, Louisville, for appellants.

Edward F. Prichard, Jr., Phillip J. Shepherd, Frankfort, John D. Caudill, Stumbo & Caudill, Martin, A.J. Higgs, Jr., Frankfort, Barkley J. Sturgill, Prestonsburg, David Lemaster, Eugene Rice, Paintsville, Kenneth Williams, Jr., Gray, Woods & Cooper, Ashland, William D. Kirkland, Christopher M. Hill, Frankfort, David A. Barber, Burchett & Barber, Prestonsburg, John Burrus, Shouse & Burrus, Lexington, Catherine C. Staib, General Counsel, Alcoholic Beverage Control Board, Frankfort, Dan Rowland, Prestonsburg, for appellees.

Jeanice Johnson, pro se.

Before HAYES, C.J., and GUDGEL and REYNOLDS, JJ.

HAYES, Chief Judge:

The appellants unsuccessfully sought relief in Franklin Circuit Court from the denial by the Alcoholic Beverage Control Board of a hearing concerning the denial and issuance of retail package liquor licenses in Floyd County. The appellants constitute two classes—those who applied unsuccessfully for licenses and those who never applied for a license but claim to be citizens concerned with the procedure utilized in granting licenses to the successful candidates. The appellees, obviously, are the successful applicants plus the Distilled Spirits Administrator (Administrator) and the Alcohol Beverage Control Board (Board).

The trial court ruled against the applicant appellants for failure to state a claim or cause upon which relief could be granted. He ruled against the nonapplicant appellants for want of standing as parties. We hold the trial court correctly ruled in both instances.

In June, 1982 the citizens of Floyd County, after a local option election held pursuant to Chapter 242 of the Kentucky Revised Statutes, voted to legalize the sale of alcoholic beverages. Pursuant to this election and the quota standards as set forth in 804 K.A.R. 9:010, Floyd County was alloted twenty-one (21) retail package liquor licenses.

Problems began when instead of twenty-one (21) there were 137 applications for licenses. The Administrator, who by authority of KRS 241.080 has the power to issue the licenses and whose office is under the Board, reviewed the applications and ordered a field investigation on both the applicants and the proposed premises.

In their complaint for declaratory judgment and injunctive relief filed in circuit court, the appellant applicants alleged they were entitled to a full evidentiary hearing before the Board because their applications were denied and because the appellee appli-

cants were successful; that all appellants were entitled to an appeal of the Administrator's actions by virtue of KRS 243.470 and that a timely appeal was taken to the Board; that the successful applicants received their licenses by the unlawful and arbitrary actions of the Board and as a result of misconduct by the Board and Administrator as there were no applicable criteria or guidelines for the fair selection of the successful applicants.

The appellants demanded: (1) a declaratory judgment that the actions of the Board, its members and the Administrator in selecting the 21 successful applicants were unlawful and arbitrary and therefore null and void; (2) the Board be ordered to establish standards and criteria for the selection of applicants to receive licenses; (3) that all applicants receive licenses; and (4) that the 21 successful applicants be restrained from exercising their rights under their licenses.

The appellants read KRS 243.560 to mean: any order of the Board refusing, revoking or suspending a license may be appealed from by ... any citizen feeling himself aggrieved. It doesn't say that.

KRS 243.560 says: *applicants* or *licensees* may appeal from a Board order *refusing, revoking* or suspending a license. A nonapplicant, nonlicensee "aggrieved citizen" may appeal from a Board order which grants or refuses a revocation or suspension of a license.

If an "aggrieved citizen" has the same right to appeal any Board order as a licensee or applicant, then there was no need to add the last part of subsection (1) of the statute. It would have read: any order of the Board refusing, revoking or suspending a license may be appealed from by the *applicant* or *licensee* or any *citizen* feeling himself aggrieved.

■ It may be necessary in some instances for an aggrieved citizen, who is not an applicant or licensee, to be permitted to appeal from a Board order refusing or granting the revocation or suspension of a license. That person may be a neighbor to a bar which is rowdy, a hangout for ex-convicts, or he may feel as a neighbor that to grant the revocation or suspension is too harsh a penalty under the circumstances. The legislature has made provisions for such an appeal. It is our belief, and we so hold, that the legislature never intended an appeal under KRS 243.560 by an aggrieved citizen, who is not an applicant, from an order of the Board granting the application for a liquor license. The citizen is heard by filing a "protest" under the provision of KRS 243.360 on the granting of a license.

■ The only way the so-called aggrieved citizen could appeal the Board's order granting an application is by relying on *Foster v. Goodpaster*, 290 Ky. 410, 161 S.W.2d 626 (1942), which held that an order of an administrative body may be attacked by independent suit where no appeal is provided, particularily upon an assertion of arbitrariness by the administrative body. But as Commissioner Clay stated in *Lexington R.B.D. Ass'n v. Dept. of A.B.C. Board*, Ky., 303 S.W.2d 268 (1957) at 269:

It is fundamental that a person may attack a proceeding of this nature by independent suit only if he can show that *his* legal rights have been violated. A public wrong or neglect or breach of a public duty cannot be redressed in a suit in the name of an individual whose interest in the right asserted does not differ from that of the public generally, or who suffers injury only in common with the general public.

■ In the instant case the nonapplicant aggrieved citizens allege no violation of any private property rights and thus the trial court was correct in holding they had no "standing" to complain against the actions of the Board or Administrator.

A nonsuccessful applicant does have a right to an appeal from a Board order refusing his or her application. KRS 243.-560(1). The unsuccessful applicant has ten (10) days after the entry of the order with which he is dissatisfied to appeal to Franklin Circuit Court.

Apparently the trial court first decided the nonsuccessful applicants had not "appealed" the refusal to grant their licenses within the mandated 10 days. The trial court later changed his decision and held these were timely appeals, but the appeals were, as a practical matter, still untimely as, to use his words, "the barrel was already empty, leaving nothing for the Board to hear." The quota of 21 licenses had already been filled.

In accordance with KRS 243.470, the Administrator on December 2, 1982, notified the unsuccessful applicants by letter that their applications were refused because the quotas had been filled.

By letter dated December 9, 1982, the unsuccessful applicants, who now are appellants, notified the Board of their appeal from the Administrator's refusal of their applications and, in accordance with KRS 243.550, a hearing was requested before the entire Board.

The Board by letter dated December 10, 1982, notified the appellants that the quota for Floyd County had been filled. This letter, which appears in the record as unsigned, neither denies nor grants the requested hearing. However, it is obvious the tenor of the letter was that an appeal would be fruitless as the quota had been filled by the granting of 21 licenses.

Under the peculiar facts of this case, particularily where the successful applicants were admittedly qualified and no protest had been made to the granting of those licenses, the "appeal" statutes (KRS 243.470 and KRS 243.550) have to be considered in relation to KRS 243.430(1) and KRS 243.450.

KRS 243.430(1) reads, "If the state administrator approves the application he shall issue the proper license." KRS 243.-450 is a clear expression by the Kentucky legislature that the Administrator, in the exercise of his reasonable judgment, determines the propriety of granting or denying a license. *See A.B.C. Board v. Woosley,* Ky., 367 S.W.2d 127 (1963).

There has been no evidence offered that the appellees were not qualified and no protest was ever made to their applications. KRS 243.430 dictates that, in that case, the Administrator *shall* issue the license. Having done this for the appellees, any "appeal" by the nonsuccessful applicants under KRS 243.550 to the Board from the Administrator's refusal to grant licenses would be an exercise in futility as the "barrel was already empty, leaving nothing for the Board to hear."

■ Therefore, the trial court was in error in finding there was no "appeal" by the appellants to the Board, however, it was harmless error and no grounds for a reversal of the trial court's decision.

The determination having been made that the appellants did perfect their appeal, it becomes necessary to decide the remaining issues raised by the appellants: (a) before the licenses were denied to these appellants, they were entitled to a due process hearing on the comparative qualifications of all applicants, and (b) the failure of the Administrator to utilize any standards and criteria previously adopted by the Board pursuant to KRS Chapter 13—Administrative Regulations.

The Administrator, having received many more applications than the allotted quota would permit him to grant, wrote each applicant a letter. That letter read:

Dear Applicant:

You have applied for a retail liquor license. At this time, the number of applicants substantially out number the quota vacancies to be filled. To assist in deciding who gets the available licenses, a number of economic factors will be taken into consideration.

It is therefore, requested that you furnish this Department with a letter and any other pertinent material indicating the relationship your use of a license will have to the economic growth and development of your area. You should include such items as the number of people you anticipate employing; how your location will improve the appearance of the area, including, if applicable, the rehabili-

tation of a blighted area, the adequacy of your assets or bank credit; the relationship your license might have to stimulating major private investment in an office building complex or shopping center; in what time frame your license will be put to use; and under what circumstances you would sell this license in the next two (2) years. Include any other items which you believe will indicate ways in which the use of your license will enhance your community.

Furnishing us a letter or memo outlining specific reasons and justifications for favorable consideration based on economic potential brings to the licensing process certain criteria and equity not considered in former years. In essence, we want to know how you view the merits of your application measured against the interests of the Commonwealth in having retail liquor outlets operated as responsible businesses doing their share in contributing to the economic well-being of the community of which they are a part. Your own involvement in and responsibility for submitting this information will materially help in our difficult task of deciding who gets a license.

You are urged to respond with a post mark no later than November 12, 1982.

Very truly yours,

Edward A. Farris
Commissioner

■ We deem this letter to contain sufficient criteria not only to permit the Administrator to exercise discretion but also to put the applicants on notice as to what factors would be considered by the Administrator before he made any decision. A regulation adopted pursuant to KRS Chapter 13 could do no more. Notice to all parties before an application was to be considered of the criteria to be used by the Administrator was the important thing. Moreover, it would be difficult for the Board to promulgate regulations adopting definite criteria to be applied in every case because criteria may differ according to the locale. KRS 241.060(2).

The remaining question of whether an applicant for a liquor license is entitled to a due process hearing on his/her application has been answered by the Federal courts and the Kentucky Court of Appeals.

The appellants rely upon the ruling in *Hornsby v. Allen,* 326 F.2d 605 (5th Cir. 1964). That court said at 609–10:

If one applicant for a license is preferred over another equally qualified as a political favor or as a result of a clandestine arrangement, the disappointed applicant is injured, but the injury to the public is much greater. The public has a right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit. The first step toward insuring that these expectations are realized is to require adherence to the standards of due process; absolute and uncontrolled discretion invites abuse.

We do not disagree with the above statement. However, in the present case, it has been admitted that all the successful applicants were qualified and there is no evidence in this record of any misconduct by the Administrator or Board.

Appellees cite *Lewis v. City of Grand Rapids,* 356 F.2d 276 (6th Cir.1966), wherein the Sixth Circuit refused to follow *Hornsby* and held that an applicant for the transfer of a license then held by another was not entitled to a due process hearing on his application. The reasoning for such holding was that under the state law the court was interpreting, a liquor license was a mere privilege, not a right and therefore no hearing was required prior to granting or denying an application since a mere applicant had no vested property right to protect.

■ Kentucky has held a liquor license is but a privilege and not a property right. *Ladt v. Arnold,* Ky.App., 583 S.W.2d 702 (1979). And while the United States Supreme Court has rejected any wooden distinction between "rights" and "privileges" governing the application of due process, it has determined that to have a property interest protected by procedural due process a person clearly must have

more than an abstract need or desire for it. A person instead must have a legitimate claim or entitlement to it. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 270, 33 L.Ed.2d 548 (1972). An applicant for a liquor license has no such legitimate claim or entitlement to a license before it is issued. The appellants were not entitled to a due process-type hearing before the Administrator or Board.

The judgment of the lower court is affirmed.

All concur.