**BEVERAGE WAREHOUSE, INC., Appellant,**

v.

**COMMONWEALTH of Kentucky, DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL; Liquor Barn # 5, LLC; and City of St. Matthews, Kentucky, Appellees.**

and

**Liquor Barn # 5, LLC, Appellant,**

v.

**Floyd Melvin Cancello; Christine McLellen; 116 McArthur Drive, LLC; Beverage Warehouse, Inc.; Commonwealth of Kentucky, Department of Alcoholic Beverage Control; City of St. Matthews, Kentucky; James L. King, St. Matthews ABC Administrator; and Louisville/Jefferson County Metro Government, Appellees.**

and

**Commonwealth of Kentucky, Department of Alcoholic Beverage Control, Appellant,**

v.

**Floyd Melvin Cancello; Christine McLellen; 116 McArthur Drive, LLC; Beverage Warehouse, Inc.; Liquor Barn # 5, LLC; City of St. Matthews, Kentucky; James L. King, St. Matthews ABC Administrator; and Louisville/Jefferson County Metro Government, Appellees.**

and

**Floyd Melvin Cancello; Christine McLellen; 116 McArthur Drive, LLC; and Beverage Warehouse, Inc., Cross–Appellants,**

v.

**Commonwealth of Kentucky, Department of Alcoholic Beverage Control; City of St. Matthews, Kentucky; James L. King, St. Matthews ABC Ad-**

ministrator; Louisville/Jefferson County Metro Government; and Liquor Barn # 5, LLC, Cross–Appellees.

Nos. 2009–CA–002020–MR, 2010–CA–001717–MR, 2010–CA–001718–MR, 2010–CA–001779–MR.

Court of Appeals of Kentucky.

Oct. 28, 2011.

Sarah Fore Whittle, F. Larkin Fore (argued), Louisville, KY, for Appellant/Appellee/Cross–Appellant, Beverage Warehouse, Inc.

Peter F. Ervin, Stephen B. Humphress, Kentucky Department of Alcoholic Beverage Control, Frankfort, KY, for Appellee/Appellant/Cross–Appellee, Commonwealth of Kentucky, Department of Alcoholic Beverage Control.

Kenneth S. Handmaker (argued), Kevin L. Chlarson, Louisville, KY, for Appellee/Appellant/Cross–Appellee, Liquor Barn # 5, LLC.

Sarah Fore Whittle, F. Larkin Fore (argued), Lousville, KY, for Appellees/Cross–Appellants, Floyd Melvin Cancello; Christine McLellen; and 116 McArthur Drive, LLC.

Before KELLER and THOMPSON, Judges; SHAKE,[1] Senior Judge.

## OPINION

THOMPSON, Judge:

We are asked to consider three orders of the Franklin Circuit Court addressing a third party's right to a hearing before and after the issuance of a liquor license. We refer to the cases which have been consolidated for appeal as Beverage Warehouse I, Beverage Warehouse II and Beverage Warehouse III.

## BACKGROUND

Beverage Warehouse, Inc. operates a licensed retail liquor store at 4323 Shelbyville Road in St. Matthews, a fourth-class city located in Jefferson County, Kentucky. Liquor Barn is a limited liability company organized under Kentucky law that applied for and received a Department of Alcoholic Beverage Control (ABC) license to operate a retail liquor store directly across the street from that operated by Beverage Warehouse.

In February 2009, Liquor Barn filed a notice in the *Louisville Courier–Journal* stating its intent to apply for a liquor license for premises located at 4301 Shelbyville Road in St. Matthews. Pursuant to KRS 243.360, Beverage Warehouse filed a protest with the ABC on the basis that the proposed Liquor Barn license was in violation of St. Matthews Ordinance Section 111.15(E), prohibiting the issuance of a liquor license within 700 feet of another licensed premises. Beverage Warehouse pointed out that the ordinance requires that the distance be measured "along the right-of-way of existing public vehicular roadways from a point on any right-of-way line nearest the entrance of any existing premises licensed for these sales to a point on any right-of-way line nearest the entrance of the proposed licensed premises." The ordinance further defines "public vehicular roadways" as "any road open to general public travel and actually and substantially used for automotive travel." Beverage Warehouse protested that, using

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

the method described in the ordinance, the distance between its premises and the proposed Liquor Barn location was less than 361 feet.

Initially, the St. Matthews City Administrator, Jim King, measured the distance between the two premises and determined that the proposed Liquor Barn license violated the "700 foot rule." Specifically, in a letter to Liquor Barn, he stated: "The measurement was taken by wheel and determined that 4301 Shelbyville Road was too close to Beverage Warehouse to have a package liquor store at that location." He also informed an ABC assistant director and the zoning department that the license would not be approved.

Liquor Barn pursued the matter and inquired as to how Administrator King measured the distance. In a March 11, 2009, letter, it suggested that Administrator King re-measure the distance using an alternative method and informed him that an engineer had measured the distance between the two premises and determined it to be no less than 830 feet. Contrary to his initial determination, Administrator King approved the application. Liquor Barn then obtained a letter of intent to issue the requisite state licenses pending final inspection from Distilled Spirits Administrator Daniel Reed and, on that same date, the application was filed in Frankfort.

Before the liquor license was issued, construction began at the proposed Liquor Barn premises, prompting Beverage Warehouse to file a supplement to its protest alleging that the issuance of a license would be unlawful and that it had not received notice that the license had been approved. Subsequently, Liquor Barn's counsel notified Beverage Warehouse that Administrator King had issued an "approval" for Liquor Barn's license. On May 28, 2009, Beverage Warehouse filed a letter

with the ABC outlining the facts and giving notice of its intent to pursue legal remedies if the license was issued. The letter was also sent to Liquor Barn, Administrator King, and St. Matthews' counsel.

On June 25, 2009, Beverage Warehouse sent a second letter to the ABC requesting a due process hearing prior to the issuance of a license to Liquor Barn. The ABC sent a letter to Beverage Warehouse denying its request.

### BEVERAGE WAREHOUSE I

After it became apparent that the licensing process would proceed despite its protests, Beverage Warehouse petitioned the Franklin Circuit Court requesting an order directing the ABC Board to provide a due process hearing prior to issuing the license to Liquor Barn and an injunction prohibiting the ABC from granting Liquor Barn a license before a due process hearing was held.

Because the Fourteenth Amendment to the United States and Section 2 of the Kentucky Constitution afford due process prior to an administrative action only if there is a deprivation of protected property or liberty interests, the circuit court first addressed whether Beverage Warehouse had a protected property or liberty interest that would entitle it to a due process hearing before the ABC Board.

Relying on *Applicants for Retail Package Liquor Licenses in Floyd County v. Gulley,* 674 S.W.2d 22, 26 (Ky.App.1984), the circuit court began with the legal proposition that a liquor license is a privilege and not a property right. It found further guidance in *Lexington Retail Beverage Dealers Ass'n v. Department of Alcoholic Beverage Control Bd.,* 303 S.W.2d 268, 269–270 (Ky.1957), where the Court rejected the claim that a competitive position

which may be adversely affected by the issuance of a liquor license by the ABC Board is sufficient to confer due process rights upon the competitor. In summation of the issue, the circuit court recited the rule that, absent allegations of fraud, bad faith, or collusion, a competitor has no standing to challenge the granting of a license or permit to another competitor by an administrative agency. *See PIE Mut. Ins. Co. v. Kentucky Medical Ins. Co.*, 782 S.W.2d 51, 54 (Ky.App.1990). Finding that no such allegations were made by Beverage Warehouse and finding no statutory authority for Beverage Warehouse's claim for a due process hearing before the ABC Board prior to the issuance of a license, the Franklin Circuit Court dismissed the petition.

.Beverage Warehouse filed a motion to alter, amend or vacate the opinion and order. Before the motion was heard, Beverage Warehouse appeared before the St. Matthews City Council and outlined its objections to the license. It then notified the circuit court that the St. Matthews City Council had set the matter for a hearing on October 27, 2009, and requested that the court order the ABC to withhold issuing a liquor license to Liquor Barn until after the city council hearing. However, before the city council hearing, licenses were issued to Liquor Barn.

After the circuit court denied Beverage Warehouse's motion to alter, vacate or amend the order dismissing the petition, Beverage Warehouse appealed. While the appeal was pending, litigation continued in the Franklin Circuit Court resulting in Beverage Warehouse II and III.

**2.** The appeal in Beverage Warehouse I remained pending and was scheduled for oral argument. However, after this Court was informed of the pending cases in the Franklin Circuit Court and upon the agreement of counsel, Beverage Warehouse I was held in

## BEVERAGE WAREHOUSE II and III

After the City of St. Matthews, Louisville/Jefferson County Metro Government, and the Commonwealth issued ABC licenses to Liquor Barn, Beverage Warehouse, St. Matthews residents Floyd Cancello and Christine McLellan, and 116 McArthur Drive, LLC (collectively Beverage Warehouse) appealed directly to the Franklin Circuit Court pursuant to KRS 243.560. We refer to that appeal as Beverage Warehouse II.

Simultaneously, Beverage Warehouse appealed to the ABC pursuant to KRS 241.200 requesting an evidentiary hearing on the issuance of the licenses by St. Matthews and Louisville Metro. After the ABC Board denied jurisdiction, Beverage Warehouse appealed to the Franklin Circuit Court, resulting in Beverage Warehouse III. Beverage Warehouse II and III were consolidated.[2]

The ABC, St. Matthews, King, Louisville Metro and Liquor Barn filed a joint motion to dismiss Beverage Warehouse II and Beverage Warehouse III. The circuit court concluded that because no final order had been entered by the ABC in issuing the licenses, Beverage Warehouse II was prematurely filed and was dismissed. As the circuit court pointed out in Beverage Warehouse II, KRS 13B.010(2) defines an administrative hearing as "any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate legal rights, duties, privileges, or immunities of a named person." Therefore, it reasoned that its jurisdiction attaches only when an

abeyance pending the circuit court's resolution of Beverage Warehouse II and III. It was further ordered that if appeals were filed, they would be consolidated with Beverage Warehouse I.

aggrieved citizen appeals a final order that was the whole or part of the final disposition of a formal adjudicatory hearing conducted by the Board.

However, it also concluded that Beverage Warehouse III presented a different scenario and was properly appealed to the Board pursuant to KRS 241.200. Therefore, it found that the Board erred when it dismissed Beverage Warehouse's appeal for lack of jurisdiction and remanded the case to the ABC for an evidentiary hearing.

Liquor Barn and the ABC appealed from the circuit court's opinion and order in Beverage Warehouse III and Beverage Warehouse cross-appealed from the opinion and order dismissing Beverage Warehouse II. Pursuant to this Court's order, the appeals and cross-appeal were consolidated with Beverage Warehouse I.

## STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

Although in the three cases presented, Beverage Warehouse seeks a hearing on the merits before the ABC Board, the procedural avenue taken in each is distinct and, as a consequence, our legal analysis of each differs. In Beverage Warehouse I, Beverage Warehouse filed an original action, not an appeal of an administrative order. Beverage Warehouse II was filed as an administrative appeal pursuant to KRS 243.560. Beverage Warehouse III was pursued as an appeal from a final order of the ABC pursuant to KRS 241.200.

In Beverage Warehouse III, Beverage Warehouse successfully argued to the circuit court that it was entitled to a hearing before the ABC Board pursuant to KRS 243.550. Thus, if the circuit court properly ordered a hearing, Beverage Warehouse has been granted the relief requested and

the issues in Beverage Warehouse I and II are moot.

Because the issues presented require statutory interpretation, our review is subject to the *de novo* standard. *Commonwealth v. Garnett*, 8 S.W.3d 573 (Ky.App. 1999). Upon review, we are bound by a number of statutory construction principles.

■ It is the court's responsibility to "ascertain the intention of the legislature from the words used in enacting the statute rather than surmising what may have been intended but was not expressed." *Metzinger v. Kentucky Retirement Systems*, 299 S.W.3d 541, 546 (Ky.2009) (quoting *Flying J. Travel Plaza v. Commonwealth*, 928 S.W.2d 344, 347 (Ky.1996)). Furthermore, the courts "may not interpret a statute at variance with its stated language." *SmithKline Beecham Corp. v. Revenue Cabinet*, 40 S.W.3d 883, 885 (Ky. App.2001). "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002).

## THE STATUTES

In Beverage Warehouse III, it was argued that Administrator King was required to refuse to issue a liquor license to Liquor Barn because the Liquor Barn location was within 700 feet of Beverage Warehouse's existing premises. Yet, without addressing the statutes applicable to orders of city administrators, the Board stated that it did not find any statutory authority conferring jurisdiction on the Board for the nature of the appeal requested. We believe the Board overlooked the pertinent statutes and begin our analysis with a discussion of the interrelation-

ship between a city administrator, the ABC Board and the public each serves.

The statutes pertaining to procedures before the administrators and the Board are part of the Alcoholic Beverage Control Act. It is a comprehensive act providing that the state, county and municipal authorities control and regulate the liquor industry. *Dunn v. Central City,* 285 Ky. 482, 148 S.W.2d 347, 348 (1941).

Pursuant to the Act, an applicant for a liquor license initiates the licensing process by advertising by publication under KRS 424.130(1)(b) its intent to apply for a license, stating the name and address of the applicant and the location of the premises for which the license is requested. KRS 243.360. Additionally, the statute provides that:

> The notice shall state the date the application was filed and shall contain the following statement: "Any person, association, corporation, or body politic may protest the granting of the license by writing the Department of Alcoholic Beverage Control, 1003 Twilight Trail, Suite A–2, Frankfort, Kentucky 40601, within thirty (30) days of the date of legal publication."

KRS 243.360(2)(c). "The purpose of this subsection of the statute is to notify the public of the proposed use of specific property so that *any member of the public* is afforded an opportunity to file a protest against the issuance of a license for that location." *Durbin v. Wood,* 369 S.W.2d 125, 126 (Ky.1963) (emphasis added).

KRS 241.170 provides for an alcoholic beverage administrator in cities where alcoholic beverages are sold. The administrator has the same function with respect to city licenses and regulations as does the Board with respect to state licenses and regulations, except that no regulation adopted by the administrator may be less stringent than the statutes relating to alcoholic beverage control or than the Board's regulations. KRS 241.190.

The statutes further provide that an application for a city license to sell alcoholic beverages first be approved by the city administrator, who must refuse the license if the "applicant or the premises for which the license is sought does not comply with all regulations of a city administrator...." KRS 243.450(1)(b). Crucial to the present case and the entire statutory scheme, the decision of the city administrator is subject to review by the Board. KRS 241.200.

KRS 241.200 provides:

> Appeals from the orders of each city administrator may be taken to the board by filing with the board within thirty (30) days a certified copy of the orders of the city administrator. Matters at issue shall be heard by the board as upon an original proceeding. Appeals from orders of the city administrator shall be governed by KRS Chapter 13B.[3]

KRS 243.550 sets forth the procedure for conducting the hearing:

> Hearings upon appeals from orders of a county administrator or a city administrator, a determination of a state director, or upon proceedings for revocation or suspension shall be held by the board. The board may, at its discretion, hold the hearing in Frankfort, or in the county where the licensed premises, or the premises to be licensed, are located. Decisions shall be made and final orders entered only upon the vote of a majority of the board. The hearings shall be

---

**3.** KRS 241.150 applies to county administrators but is otherwise identical to KRS 241.200.

conducted in accordance with the provisions of KRS Chapter 13B.

In addition to an administrative appeal to the Board, the legislature further provided for an appeal to the Franklin Circuit Court from final orders of the Board. KRS 243.560 provides in part:

(1) Any final order of the board refusing, revoking or suspending a license may be appealed from by the applicant or licensee, and any final order of the board granting or refusing to revoke or suspend a license may be appealed from by any citizen feeling himself aggrieved. (2) The person aggrieved by a final order may file a petition in the office of the clerk of the Franklin Circuit Court in accordance with KRS Chapter 13B.

## THE ISSUES PRESENTED

█ First, we address a procedural issue presented after the parties submitted their briefs. Despite the lengthy history of this litigation, the ABC argues that the Franklin Circuit Court did not have subject matter jurisdiction in Beverage Warehouse III because Beverage Warehouse did not name the Alcoholic Control Board as a party. Its contention is based on KRS 243.560(3) and its requirement that "the Board" must be a party to an appeal.

The statutory scheme conclusively establishes that the Board is not an administrative department separate from the ABC but is controlled by and exists as a part of the ABC. Therefore, the designation of the ABC as a party was sufficient to confer subject matter jurisdiction. *See Lassiter v. American Express Travel Related Services Co., Inc.,* 308 S.W.3d 714 (Ky.2010).

█ Liquor Barn and the ABC both argue that the circuit court erred because

the ABC properly dismissed the appeal filed pursuant to KRS 241.200, because the statutory appeal is limited to applicants and licensees. They cite *Gulley,* 674 S.W.2d at 24, for the proposition that protestors have no recourse to administrative or judicial review of a city administrator's decision. They also argue that the circuit court created a right under KRS 243.550 that was not afforded by the legislature.

Liquor Barn contends that Beverage Warehouse III should have been dismissed because the Board dismissed the appeal without an evidentiary hearing and, therefore, it did not issue a final order.[4] Further, it argues that even if an appeal was available pursuant to KRS 241.200, it was precluded by the "honest error" doctrine applicable to the issuance of licenses by administrative officials, and the associated doctrine, equitable estoppel. It further contends that *res judicata* bars the appeal.

Liquor Barn and the ABC contend that neither the statutes nor long-standing procedures confer upon Beverage Warehouse the right to a hearing before the ABC in its appeal of the issuance of a license by Administrator King. They contend that a nonapplicant has no property interest in the license and the approval of a license is not appealable. The ABC adds that KRS 241.200 provides for an appeal only by licensees who have been penalized by the city administrator.

Liquor Barn and the ABC point out that, absent a property right or liberty interest, a citizen has not been deprived of a constitutionally protected interest and, therefore, is not entitled to a due process type hearing. *Lexington Retail Beverage Dealers Ass'n,* 303 S.W.2d at 269. That case involved an independent suit by cur-

---

4. The ABC titled the order dismissing the appeal as a "final order" and does not join in

Liquor Barn's appellate argument.

rent license holders challenging an ABC Board order increasing retail package and retail drink license quotas for Fayette County. The Court held that, because no appeal was provided by statute and a license does not confer a property interest, the plaintiff's interests could only be as competitors. Reasoning that there is no right to be free from competition, the Court dismissed the complaint. However, it stressed that the plaintiffs did not invoke the provisions of KRS 243.560(1) and made no comment as to their status as aggrieved citizens under that statute. The case now presented is an appeal to the Board pursuant to a purported statutory right. Thus, it is unnecessary to delve into a scholarly discussion of the distinctions between rights and privileges.

Based on similar distinctions, we are not persuaded that *Gulley* controls. Liquor Barn and the ABC allege that the case precludes any appeal from the issuance of a liquor license and the sole remedy for a nonapplicant is to file a protest pursuant to KRS 243.360. The cited language is as follows:

It may be necessary in some instances for an aggrieved citizen, who is not an applicant or licensee, to be permitted to appeal from a Board order refusing or granting the revocation or suspension of a license. That person may be a neighbor to a bar which is rowdy, a hangout for ex-convicts, or he may feel as a neighbor that to grant the revocation or suspension is too harsh a penalty under the circumstances. The legislature has made provisions for such an appeal. It is our belief, and we so hold, that the legislature never intended an appeal under KRS 243.560 by an aggrieved citizen, who is not an applicant, from an order of the Board granting the application for a liquor license. The citizen is heard by filing a "protest" under the provision of KRS 243.360 on the granting of a license.

*Gulley,* 674 S.W.2d at 24.

When applied broadly and separately from the context in which it was written, the language could reasonably foreclose the current appeal. However, *Gulley* was not an appeal pursuant to KRS 241.200 but was an original action for declaratory judgment and injunctive relief. In fact, according to the statement of the facts by the Court, the citizens appealed from the administrator's order granting the license to the Board and recognized that such an appeal was authorized by the legislature. *Id.*

Moreover, we agree with the circuit court's observations in regard to the current precedential value of *Gulley.* After the decision, KRS 243.560 was amended to include the following subsection:

If the appeal is from a final order of the board refusing, revoking, or suspending a license, the costs of the appeal shall be taxed against the applicant or licensee in any case. If the appeal is from a final order issuing or refusing to revoke or suspend a license, the costs shall be taxed against the citizen who, feeling himself aggrieved, has contested the final order, if the final order of the board issuing or refusing to revoke the license is sustained. If the final order is set aside with direction to the board to refuse, revoke, or suspend the license, the costs shall be taxed against the licensee.

KRS 243.560(4). Although the syntax of KRS 243.560(1) remains less than ideal, the addition of subsection (4) makes clear that an appeal can be pursued by an aggrieved citizen from the issuance of a license because it provides that the costs may be assessed against the citizen. Furthermore, in 2004, the Supreme Court expressly stated that appellate review is reserved for certain situations, including

those where a citizen is aggrieved by the issuance or non-issuance of a license. *Kentucky Licensed Beverage Ass'n v. Louisville–Jefferson County Metro Government,* 127 S.W.3d 647, 650–651 (Ky. 2004). Thus, whatever precedential value *Gulley* may have in the context of a KRS 243.560 appeal remains to be decided. We do not decide the issue because we conclude that the opinion offers no guidance to the resolution of the right to a hearing pursuant to KRS 241.200. We now discuss the statutes and cases that guide our decision.

Liquor Barn and the ABC contend that the circuit court's decision expanded and rewrote KRS 241.200. They argue that the approval of a liquor license is not an "order," as that term is used, and giving hearing rights to nonapplicants violates the separation of powers clause expressed in Section 28 of the Kentucky Constitution.

Presented with this contention, we reiterate the cornerstone of statutory interpretation:

> It may be proper, in giving a construction to a statute, to look to the effects and consequences, when its provisions are ambiguous, or the legislative intention is doubtful. But, when the law is clear and explicit, and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by legislative, and not judicial action.

> The court should construe statutes in accordance with the legislative intent, since it is always to be presumed the Legislature designed the statute to take effect, and not be a nullity.

*Aldridge v. Commonwealth,* 192 Ky. 215, 232 S.W. 619, 621 (1921) (quoting *Bosley v. Mattingly,* 53 Ky. 89, 14 B.Mon. 89 (Ky. App.1853)).

When the legislature uses particular language in one section and not in another, "it must be presumed that the Legislature intended something by what it attempted to do." *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.,* 141 S.W.3d 378, 386 (Ky.App.2004). When a statute confers a right to appeal and is remedial in nature, we liberally construe it in favor of its remedial purpose. *Workforce Development Cabinet v. Gaines,* 276 S.W.3d 789, 792 (Ky.2008).

We conclude that the right to appeal to the ABC from a city administrator's approval of a license is expressly provided in the statutory language.

Unlike KRS 243.560, which specifies that only applicants, licensees and aggrieved citizens may appeal from a final order of the Board to the Franklin Circuit Court, the current version of KRS 241.200 does not name a particular person or entity that may appeal. However, as originally enacted in 1939, the precursor to KRS 241.200 was contained in § 2554b–111 of the Alcoholic Beverage Control Act, and provided that "[a]ppeals from the orders of each City Administrator, may be taken by any party aggrieved to the State Alcoholic Control Board...." In 1942, a portion of § 2554b–111 became KRS 241.200. Absent from the revision was the phrase "any party aggrieved." Likewise, the current version of the statute contains no limiting language as to who may appeal.

Despite the deletion of the phrase "by any party aggrieved" in KRS 241.200, Liquor Barn and the ABC contend that only a "party" to the proceedings before the city administrator can appeal to the Board. Applying their logic, an appeal is available only to the applicant or licensee.

Contrary to Liquor Barn's and the ABC's assertions, had the legislature intended to limit an appeal to an applicant or a licensee, it could have used limiting lan-

guage as in other statutes providing for appeals.[5] We are equally persuaded that had the legislature intended to exclude the approval of a liquor license from the term "order" as used in the statute, it easily could have done so. The term "order" is not modified by the term "final" as in KRS 243.560 and, therefore, the administrator's order does not have to be entered following an evidentiary hearing. Instead, the statute is broadly written and does not limit the issues to be presented but merely refers to "[m]atters at issue." Had the legislature intended to restrict the parties that may appeal and the orders appealable, it would have included language similar to that contained in KRS 243.560.

Contrary to the ABC's suggestion, the result reached by the circuit court and this Court is not contradicted by prior interpretations of the statute. Our Supreme Court has specifically held that KRS 241.200 makes provisions for appeals to the Board from orders of a city alcoholic beverage control administrator pursuant to KRS 243.550 to 243.590. "Those statutes obviously contemplate an appeal upon the administrative aspects of the order, to provide a review of the administrative discretion of the city administrator." *Haggard v. City of Dayton*, 508 S.W.2d 590, 591 (Ky.1974). Moreover, although KRS 241.200 has been rarely addressed, a myriad of cases in this Commonwealth involve protestor appeals.

In *Dougherty v. Kentucky Alcoholic Beverage Control Bd.*, 279 Ky. 262, 130 S.W.2d 756 (Ky.1939), nonapplicants appealed the grant of a license on the basis of the proximity of the premises to a church. Nonapplicant protestors were likewise granted hearings before the Board in *Shearer v. Dailey*, 312 Ky. 226,

226 S.W.2d 955 (Ky.1950), and in *O'Sullivan v. Portwood*, 309 S.W.2d 773 (Ky. 1958). In *Moberly v. King*, 355 S.W.2d 309, 309 (Ky.1962), the proceedings were described as follows:

Appellant Taylor, the proprietor of a restaurant in Frankfort, applied to the Alcoholic Beverage Control Board for a retail malt beverage license. It was protested by a number of neighbors. After a hearing prescribed by statute, the license was granted. Appellees, the protesting parties, appealed to the Franklin Circuit Court and the order of the Board was set aside. Taylor and the Board appeal.

We also refer to our Supreme Court's decision in *Hagan v. Farris*, 807 S.W.2d 488 (Ky.1991), where, again, the Court heard an appeal from protestors of a liquor license after the Board held a hearing to consider the protestors' complaints.

While the procedural sequence was not emphasized by the Court in the cases cited, the critical prerequisites to the judicial appeal were that: (1) the approval of a license was an order; (2) a hearing was held before the Board; and (3) the protestors could appeal the Board's final order granting the license.

In this case, the circuit court held that Beverage Warehouse was entitled to a hearing and remanded the case to the Board for an evidentiary hearing to determine whether the licenses issued to Liquor Barn were issued in violation of KRS 243.450, which prohibits the grant of a liquor license if the premises for which the license is sought does not comply with all regulations of a city administrator. It is argued that the circuit court misconstrued the statute and that licenses issued in vio-

---

**5.** KRS 243.470 is limited to appeals by applicants and KRS 243.520 limits hearings to licensees.

lation of a city ordinance are nevertheless valid.

This argument is not only illogical but directly contradicts the language used in the statute. KRS 243.450(1)(b) expressly states that the license shall be refused "[i]f the applicant or the premises for which the license is sought does not comply with all regulations of a city administrator or county administrator...." As pointed out by Liquor Barn, a city has the authority to enact an ordinance without approval by the ABC. *City of Bowling Green v. Gasoline Marketers, Inc.,* 539 S.W.2d 281 (Ky.1976). However, in accordance with the explicit terms of the statutes and the cases cited herein where the action of a city administrator has been reviewed, a city administrator may not act arbitrarily or in violation of the law.

As revealed by the cited caselaw, the ABC has historically heard appeals by protestors and has not limited review to city administrator's orders imposing penalties. Thus, it cannot complain that a protestor's right to a hearing is overly burdensome or absurd. It is an orderly statutory scheme enacted to afford protestors a meaningful opportunity to be heard first by the ABC Board and, if the person is an "aggrieved citizen," by the court. We summarize the procedure.

After a properly filed application for a license is filed and the statutory notice given, anyone is afforded the right to protest the application. Without a hearing, the city administrator may, within his or her discretion, either accept or reject the application. Following a proper appeal to the ABC pursuant to KRS 241.200, a hearing is held after which the Board renders a final order. The statutory scheme then provides for an appeal to the Franklin Circuit Court pursuant to KRS 243.560. At that time, the circuit court must make the initial determination as to whether the protestor is an "aggrieved citizen."

Although our consideration of the issue as to who is an aggrieved citizen is beyond the scope of the issues presented, we cannot ignore the significance of a liquor license issued in violation of local ordinances or statutes on the property interests of neighboring properties. We comment to emphasize the potential property interests of protestors and the logical statutory scheme that affords those aggrieved the right to a hearing and, ultimately, judicial review.

The Court has long recognized the significance of judicial review of administrative decisions:

As stated by Mr. Justice Brandeis, in his separate opinion, in *St. Joseph Stock Yards Company v. United States,* 298 U.S. 38, 56 S.Ct. 720, 740, 80 L.Ed. 1033: "The supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied and whether the proceeding in which the facts were adjudicated was conducted regularly." See Article in American Bar Journal, Vol. XXV, No. 6, page 453, by Hon. Malcolm McDermott, entitled, "To what extent should the decision of administrative bodies be reviewable by the courts?"

*Dougherty,* 130 S.W.2d at 758. We believe that the statutory scheme affords such an opportunity.

Having concluded that Beverage Warehouse is entitled to a hearing before the ABC Board, we address the remaining issues presented by Liquor Barn.

Liquor Barn argues that the ABC order dismissing the appeal was not a final order. Beverage Warehouse appealed the dismissal pursuant to KRS 243.560, which requires compliance with KRS Chapter 13. KRS 13B.010(6) provides that a final order

"means the whole or part of the final disposition of an administrative hearing, whenever made effective by an agency head, whether affirmative, negative, injunctive, declaratory, agreed, or imperative in form." Subsection 2 of that same statute states: "'Administrative hearing' or 'hearing' means any type of formal adjudicatory proceeding conducted by an agency as required or permitted by statute or regulation to adjudicate the legal rights, duties, privileges, or immunities of a named person."

Pursuant to an ABC order, the parties submitted briefs on the issue of jurisdiction. The ABC subsequently made a legal determination that it lacked jurisdiction to hear the appeal and further held that the statute conferred jurisdiction on the Franklin Circuit Court. It then issued its final order dismissing the appeal. Following an appeal filed by Beverage Warehouse, the ABC issued a certificate of record to the Franklin Circuit Court pursuant to the provisions of KRS 13B.140, which included the briefs and documents submitted and considered by it when it adjudicated that it had no jurisdiction. Thus, although no evidentiary hearing was held, the case was finally disposed of as a matter of law in a formal adjudicatory proceeding.

Liquor Barn also asserts that the "honest error" rule and the closely related doctrine of equitable estoppel preclude a hearing before the Board. Citing *City of Berea v. Wren*, 818 S.W.2d 274, 277 (Ky. App.1991), it contends that when an administrative official errs in good faith and a property owner relies on such action, the governmental entity is estopped from enforcing its regulations to the detriment of the property owner. In *City of Berea*, the Court held city officials could not revoke a building permit that had been erroneously issued due to a zoning map error after the property owner, in reliance on the city's issuance of the permit, expended considerable money preparing his property for construction. *Id.*

The applicability of the doctrine to this situation is questionable because Liquor Barn proceeded with construction knowing that Beverage Warehouse was vehemently contesting the approval of the liquor license. However, that issue and whether Administrator King acted in good faith are questions of fact to be decided by the ABC Board upon remand. Our review is limited to whether Beverage Warehouse is entitled to a hearing pursuant to KRS 241.200.

The final issue is whether Beverage Warehouse's argument is precluded by the doctrine of *res judicata*.

[T]he doctrine of *res judicata* operates to preclude repetitious actions. *Napier v. Jones*, 925 S.W.2d 193 (Ky.App.1996). In order to apply *res judicata*, there must be 1) identity of the parties between the two actions, 2) identity of the two causes of action, and 3) the prior action must have been decided on its merits. *Id.*, at 195. Claim preclusion, a subpart of *res judicata*, "bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky.1998). "In short, the rule of *res judicata* does not act as a bar if there are different issues or the questions of law presented are different." *City of Louisville v. Louisville Professional Firefighters Ass'n*, 813 S.W.2d 804, 806 (Ky.1991), quoting *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky.1970).

*Harrod v. Irvine*, 283 S.W.3d 246, 250 (Ky.App.2009).

Although Beverage Warehouse has been consistent in its request for a hearing before the ABC Board, there is no identity of the causes of action and, therefore, *res judicata* cannot apply. As emphasized throughout our discussion, Beverage Warehouse I was an original action and not a statutory appeal. Beverage Warehouse II was an appeal from the decision of the Board to issue the liquor license to Liquor Barn to the circuit court pursuant to KRS 243.560. Finally, the case we have decided on its merits was pursued as an appeal to the Board from an order of the city administrator pursuant to KRS 243.200. We conclude that *res judicata* does not preclude the relief sought in Beverage Warehouse III.

Based on the foregoing, the opinions and orders of the Franklin Circuit Court are affirmed.

ALL CONCUR.